UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAMION SAULTERS,

                Petitioner,

    -vs-

JAMES CONWAY,

                Respondent.

**DECISION AND ORDER**
**No. 08-CV-06169T**

_____

## I. Introduction

*Pro se* Petitioner Damion Saulters ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered January 9, 2002, in New York State, Supreme Court, Erie County, convicting him, after a jury trial, of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25[3]) and Robbery in the First Degree (Penal Law § 160.15[1]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.[1]

## II. Factual Background and Procedural History

The charges arise out of an incident that occurred at 2 Daisy Street in the City of Buffalo on March 19, 1995, wherein George

---

[1] This case was transferred from the Hon. Charles J. Siragusa to the Hon. Michael A. Telesca on June 25, 2010 (Dkt. #14). Subsequent thereto, the parties, acting upon a previous Order signed by Judge Siragusa on February 25, 2009 (Dkt. #13), consented to jurisdiction by Magistrate Judge Victor E. Bianchini (Dkt. #16). That consent is mooted by this Decision and Order.

Baxter ("Baxter" or "the victim") was murdered in the course of a drug deal.

On the day of the murder, Petitioner went over to co-defendant William Brown's ("Brown") home to purchase crack cocaine from Andre Kelley ("Kelley"), their drug dealer. When Kelley did not show up at Brown's home, Brown and Petitioner took a taxicab to Baxter's home at 2 Daisy Street in the City of Buffalo for purposes of purchasing drugs. When Petitioner and Brown arrived, Baxter was home. Baxter called Kelley and a friend, Antonio Thompson ("Thompson"), to come over. Shortly thereafter, Thompson, along with his girlfriend, Leslie Nicole Houston ("Houston"), and her friend, Constance Bratton ("Bratton"), arrived at Baxter's home. About twenty minutes later, Kelley arrived at Baxter's home in a taxicab. Trial Transcript of 10/23/06-10/26/06 [T.T.] 38, 43-48.

Brown and Kelley proceeded to engage in a drug sale. During the sale, Petitioner pulled a small, black automatic handgun on Kelley. Petitioner stated, "you know what time it is." Petitioner instructed Kelley to get on the floor, and then instructed Thompson to pat Kelley down for a gun and take the drugs from his pockets. Petitioner also told Brown to flag the taxicab driver (who was a friend of Kelley's) to enter the home and then hit him in the head with a bottle when he entered. Brown signaled to the taxicab driver to come into the home, and then hid in the stairwell to the basement with a bottle in his hand. The taxicab driver entered the home and asked what was going on. In response, Kelley indicated that it was a "set up." Shortly thereafter, several gunshots were

fired, and Brown ran out of the stairwell to find Baxter lying against a door with a bullet hole in his shoulder.  Baxter died from multiple bullet wounds to the chest, back, and head.  Brown ran to Thompson's house, where he saw Thompson's brother and two girls sitting on the porch.  Eventually, Petitioner and Thompson arrived.  Brown, Thompson, and Petitioner then took a taxicab to a house on East Delavan where Petitioner placed the gun inside a closet.  While at this house, the three men discussed what had happened at Baxter's home, and Petitioner indicated that he thought he had killed Kelley[2] and Baxter.  Before leaving the home on East Delavan, the three men divided up the money that they had taken from Kelley and discussed selling the drugs they had taken from him.  T.T. 47-58, 175, 181-182.

Petitioner was indicted by an Erie County Grand Jury and charged with two counts of second degree murder, two counts of first degree robbery, two counts of second degree criminal possession of a weapon, two counts of first degree criminal use of a firearm, and one count of attempted second degree murder.

Petitioner proceeded to trial and was found guilty of one count each of second degree murder and first degree robbery.  He was subsequently sentenced to concurrent, indeterminate terms of imprisonment of twenty-five years to life for murder and eight and one-third years to twenty-five years for robbery.  Sentencing Mins. 6.

---

[2]  Kelley survived the incident and testified at Petitioner's grand jury proceedings, as discussed at "Section IV, 1" below.

The Appellate Division, Fourth Department unanimously affirmed Petitioner's judgment of conviction on November 19, 2004. People v. Saulters, 12 A.D.3d 1178 (4th Dept. 2004); lv. denied, 4 N.Y.3d 803 (2005).

By motion dated June 25, 2005, Petitioner moved to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. L. ("C.P.L.") § 440.10 on the ground that he was denied the effective assistance of trial counsel. That motion was denied on procedural grounds for failure to properly raise the issue on direct appeal. See Mem. and Order of Erie County Supreme Court (Hon. Richard C. Kloch, Sr.), Ind. No. 95-0771-001, dated 11/03/05 (Pet'r Attach. C). Petitioner appealed that denial, which was denied by the Appellate Division, Fourth Department on May 10, 2007. See Decision of the Appellate Division, Fourth Department (Hon. Elizabeth W. Pine), Ind. No. 95-0771-001, dated 05/10/07 (Resp't Ex. D).

By motion for a writ of error coram nobis dated October 12, 2007, Petitioner challenged the effectiveness of appellate counsel. The Appellate Division, Fourth Department summarily denied Petitioner's motion. People v. Saulters, 46 A.D.3d 1476 (4th Dept. 2007); lv. denied, 10 N.Y.3d 816 (2008).

The instant habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) defects in the grand jury proceeding; and (2) ineffective assistance of appellate counsel. Petition [Pet.] ¶ 22A-B (Dkt. #1); Mem. of Law in Supp. of Habeas Corpus [Mem.], Points I-II (Dkt. #11);

Supplemental Mem. [Supp'lm. Mem.] (Dkt. #12); Pet'r. Second Supplemental Mem. [Sec. Supp'lm. Mem.] (Dkt. #15).

**III. General Principles Applicable to Habeas Review**

**A.   The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

## IV. Petitioner's Claims

### 1. Defects in the Grand Jury Proceeding

Petitioner argues that defects in the grand jury proceeding deprived him of his constitutional right to due process. In particular, he argues that the indictment was based on the perjured testimony of witness Kelley. He argues, consequently, that the trial court erred when it denied his request for an in camera examination of Kelley to determine whether Kelley perjured himself, thereby subjecting the indictment to dismissal. Pet. ¶ 22A; Mem., Point I; Supp'lm. Mem.; Sec. Supp'lm. Mem. Petitioner raised this claim on direct appeal, and it was rejected on the merits. Saulters, 12 A.D.3d 1178-79. This claim is not cognizable by this Court on habeas review.

The law is well-settled that there is no federal constitutional right to indictment by a grand jury in a state criminal prosecution. See Alexander v. Louisiana, 405 U.S. 625, 633 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."); see also LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (noting that the Fifth Amendment's right to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment) (citations omitted). The New York Court of Appeals has recognized that "[t]he right to indictment by a Grand Jury in New York is dependent solely upon [the] State Constitution ...." People v. Iannone, 45 N.Y.2d 589, 594 n.3 (1978) (citation omitted). Federal habeas relief is not available for mere violations of state law, however. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Furthermore, federal courts have held that "[h]abeas corpus is not available to test the sufficiency of the indictment." United States ex rel. Mintzer v. Dros, 403 F.2d 42, 43 (2d Cir.1967) (citing United States ex rel. Tangredi v. Wallack, 343 F.2d 752 (2d Cir.1965) (citing Knewel v. Egan, 268 U.S. 442, 446 (1925)); see also Marcus v. Conway, No. 04 Civ. 0064(JSR)(KNF), 2007 WL 1974305, *4 (S.D.N.Y. July 5, 2007) ("The petitioner's claim, that he had a constitutional right to be tried for robbery based on a grand jury indictment free of defect, does not provide a basis for habeas review because the claim does not present a federal question, as

required by 28 U.S.C. 2254(a).").  Likewise, claims based on alleged defects in grand jury proceedings are not cognizable in a federal habeas petition unless they present an independent federal constitutional claim.  See Lopez v. Riley, 865 F.2d 30, 32-33 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court.").

Accordingly, Petitioner's claim does not provide a basis for habeas relief, and the claim is denied.

## 2. Ineffective Assistance of Appellate Counsel

Petitioner argues that he was deprived of his Sixth Amendment right to the effective assistance of appellate counsel due to counsel's failure to raise ineffective assistance of trial counsel on direct appeal.  Pet. ¶ 22B; Mem., Point II.  Petitioner raised this claim in his coram nobis application, which was summarily denied by the Appellate Division, Fourth Department.  Saulters, 46 A.D.3d at 1476.  Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim.  Sellen v. Kuhlman, 261 F.3d at 303, 311-12 (2d Cir. 2001).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under "prevailing professional norms," and that there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have

been different." Strickland v. Washington, 466 U.S. 668, 688 (1984). This standard applies equally to trial and appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Id. at 533-34; Smith v. Robbins, 528 U.S. 259, 285 (2000). Moreover, counsel is not required to raise all colorable claims on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, counsel may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." Id. at 751-53. And, of course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 689-90.

The Court finds that Petitioner has failed to demonstrate that his appellate counsel's conduct was constitutionally deficient, and that, but for the deficiency, the result of his appeal would likely have been different.

Here, Petitioner contends that he received ineffective assistance of appellate counsel because counsel failed to challenge trial counsel's failure to cross-examine Houston regarding the date

on which she first became acquainted with Petitioner.  This claim fails.

Appellate counsel is not required to raise all colorable claims on appeal, and is permitted to focus on those that present "the most promising issues for review." Jones, 463 U.S. at 751-53.  Notably, the record reflects that appellate counsel did just that.  Appellate counsel submitted a thorough, well-researched brief in which she persuasively argued six issues, one of which Petitioner adopted in the habeas petition.  See Appellant's Br. on Appeal, Points I-VI (Resp't Ex. B).

Moreover, Petitioner's argument fails to the extent that the underlying issue he faults appellate counsel for failing to raise on direct appeal lacks merit.[3]  Appellate counsel cannot be faulted for failing to raise non-meritorious issues. United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), cert. denied, 531 U.S. 811 (2000).

The record reflects that Houston testified, in pertinent part, during a pre-trial Rodriguez[4] hearing that she first met Petitioner on her birthday, February 16, 1994, at the home of her aunt, and had seen him on a daily basis during the following summer and on weekends during the ensuing school year.  Hearing Mins. [H.M.] 19.

---

[3] Notably, the underlying ineffective assistance of a trial counsel claim was not raised as a stand-alone claim in the habeas petition. Therefore, this Court will address said issue only to the extent it is necessary to analyze Petitioner's properly raised ineffective assistance of appellate counsel claim.

[4] A hearing pursuant to People v. Rodriguez, 79 N.Y.2d 445 (1992) is held to determine the extent of a witness's prior familiarity with the defendant.

-11-

At the conclusion of the Rodriquez hearing, the trial court made the following findings: that Houston became acquainted with Petitioner at least one year prior to the events involved in the crime; that she saw him often thereafter; and that she and Petitioner knew each other by name, excluding the possibility of a misidentification. H.M. 32-33.

Petitioner argues that Houston's testimony at the Rodriquez hearing that she met Petitioner on February 16, 1994 was false because he was continuously incarcerated from December 22, 1993 until November 1, 1994. He argues further that he brought this information to trial counsel's attention, and that counsel failed to act accordingly. The record belies Petitioner's contention, which shows that trial counsel did, in fact, investigate the possibility that Houston could not have met Petitioner in February 1994. Prior to the commencement of the trial, counsel informed the court that he had obtained a record from the Erie County Correctional Facility indicating that Petitioner had been held there from December 22, 1993 to August 3, 1994. T.T. 14. The trial court advised defense counsel that he could use the fact of Petitioner's incarceration in his cross-examination of Houston. However, at this same time, counsel voiced his concern, on the record, that, if he were to cross-examine Houston on this issue, the jury would learn that Petitioner was previously incarcerated. T.T. 15-17. Consequently, trial counsel strategically chose not to cross-examine Houston on this topic. Thus, Petitioner has failed

-12-

to overcome the presumption that appellate counsel's decision to forego raising this issue on direct appeal was reasonable under the circumstances. Because he has failed to do, it is unnecessary for the Court to determine whether Petitioner suffered prejudice resulting from appellate counsel's alleged error. Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) ("'[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.'" (alterations in original) (quoting Strickland, 466 U.S. at 697)).

Accordingly, the Court finds that the state court's determination of this issue did not contravene or unreasonably apply settled Supreme Court law. The claim is denied.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

---

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: August 2, 2010
Rochester, New York